IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BRYAN EPP, | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | *      Civil No. 23-0595-BAH |
| STATE FARM FIRE AND CASUALTY CO., | * |
| Defendant. | * |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Bryan Epp ("Plaintiff" or "Epp") brought suit against Defendant State Farm Fire and Casualty Co. ("State Farm" or "Defendant") alleging breach of contract and failure to settle claims in good faith in violation of Maryland Code, Courts & Judicial Procedure § 3-1701. ECF 1. Pending before the Court is Defendant's motion to dismiss, or, in the alternative, motion for summary judgment (the "Motion"). ECF 33. Plaintiff filed an opposition, ECF 39, and Defendant filed a reply, ECF 42. All filings include memoranda of law and exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Defendant's Motion is **GRANTED** in part and **DENIED** in part.

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page. Defendant made several additional filings related to the Motion including a corrected exhibit and proposed order, ECF 35, a memorandum in support of the Motion, ECF 36, and a joint motion to amend the schedule for Plaintiff's response to the Motion, ECF 37, which the Court granted by paperless order, ECF 41.

## I.    BACKGROUND

This case was filed on March 6, 2023, and arises out of a dispute regarding insurance coverage of a house fire suffered by Plaintiff on March 7, 2019.  ECF 1, at 2 ¶ 13.  At all times relevant to this action, Plaintiff received homeowners' insurance coverage from Defendant for his single-family residence located in Mechanicsville, Maryland.  ECF 36-1, at 1 ¶ 1.[2]  On March 7, 2019, a fire broke out at Plaintiff's home, destroying the property.  *Id.* ¶ 2.  Plaintiff submitted a claim under the policy and was assigned Claim Specialist Darnell White ("White") for handling the claim.  *Id.* ¶¶ 2–3.  On March 11, Defendant issued a check for $10,000 to Plaintiff as an advance payment under his personal property coverage.  *Id.* ¶ 4; *see also* ECF 33-6, at 1.  White personally gave the check to Plaintiff while conducting an initial inspection of the home.  *Id.* at 2 ¶ 4.  To help Plaintiff in creating an inventory of his personal property lost in the fire, White handwrote a preliminary list of damaged property he observed during his inspection of the home but did not include additional details as to the estimated age and value of each item of property.  *Id.* ¶ 8; *see also* ECF 33-3, at 1–7.  Later, in December 2019, Plaintiff and White subsequently

---

[2] For reasons noted in this memorandum, the Court exercises its discretion under Fed. R. Civ. P. 12(d) to treat Defendant's Motion as one seeking summary judgment, and is therefore permitted to review "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." *See* Fed. R. Civ. P. 56(c)(1)(A).  In its memorandum supporting its motion, Defendant provides a statement of purportedly uncontested facts. *See* ECF 36-1, at 1–9 ¶¶ 1–26.  However, Plaintiff characterizes portions of this statement as consisting of "cherry-picked excerpts" from depositions and agrees only with the first portion of Defendant's summary as constituting an undisputed summary of the facts of the case. ECF 39, at 2.  Such blanket disagreement with alleged facts is insufficient under Rule 56(c)(1), which requires "[a] party asserting that a fact cannot be or is genuinely dispute" to "support the assertion" with references to "materials in the record" or by "showing that the materials cited" by the opposing party "do not establish the absence or presence of a genuine dispute."  Regardless, where the Court cites specifically to the parties' summary of the facts, it will attempt to cite to the uncontested portion of Defendant's account.  However, as Plaintiff does not challenge the validity of the depositions or other forms of evidence offered by Defendant, but merely the Defendant's alleged "cherry picking" of the evidentiary record, the Court may also rely on these materials in the record as it considers the Motion.

spoke about this list on the phone and White told Plaintiff that Plaintiff "needed to put ages and prices to the list," with Plaintiff later noting that he "told him." ECF 33-8, at 10.

Upon completion of the inspection, Defendant prepared an estimate of the cost to repair the fire damage to Plaintiff's home. ECF 36-1, at 2 ¶ 5. On June 13, 2019, Defendant issued a check payable to Plaintiff and Plaintiff's mortgage company in the amount of $196,613.23. *Id.* ¶ 6. The sum represented the base coverage of $191,700 under Plaintiff's policy with Defendant, plus an additional $6,913.23 paid out under an optional increased dwelling coverage, minus the policy deductible of $2,000. *Id.* ¶ 7. Defendant mailed the check along with a cover letter dated June 10, 2019, which also contained Defendant's estimate for repair of the residence. ECF 33-2, at 1 (draft estimate from claim representative). Defendant estimated the total cost of repair at $198,613.23, encompassing material, supplies, labor, and equipment. *Id.* at 90. Plaintiff contends that Defendant arrived at its estimate by "fail[ing] to properly inspect the property and fail[ing] to properly scope the loss by intentionally ignoring areas of damage and turning a blind eye to the true extent of the loss." ECF 1, at 2 ¶ 15.

Plaintiff hired John Morris ("Morris"), a builder based in St. Mary's County, Maryland, to rebuild his house. ECF 1, at 2 ¶ 17; *see also* ECF 36-1, at 3 ¶ 11. Plaintiff alleges that Morris confirmed that Defendant's estimate was inadequate. ECF 1, at 3 ¶ 19. He also reports, and Defendant does not dispute, that Morris provided Defendant with several updated estimates throughout the course of 2020 and 2021, each one reflecting rising materials and labor costs as a result of the COVID-19 pandemic. *Id.* ¶¶ 22–29.[3] Defendant's record of Plaintiff's claim indicates

---

[3] Plaintiff alleges in the complaint that Morris's first estimate, made on or about June 7, 2020, was for $260,720. ECF 1, at 3 ¶ 19. On June 18, Plaintiff says, it rose to $264,000, while on December 3, the estimate rose again to $284,088. *Id.* ¶¶ 22–25. Plaintiff alleges that Defendant approved payment of $254,376 in April 2021, and Morris responded that the cost of rebuilding the property

that it paid Plaintiff an additional $48,212.18 on January 20, 2021. ECF 33-6, at 1 (claim totals for Bryan Epp). Per Alexandra Thurston, a manager for Defendant and White's supervisor, the payment was made based on documentation submitted from Morris. ECF 35-1, at 2 ¶ 13 (sworn affidavit of Alexandra Thurston). In total, Defendant paid $244,825.41 toward the rebuilding of Plaintiff's home. *Id.* ¶ 14; *see also* ECF 33-6, at 1.

Unsatisfied with the amount Defendant had paid, Plaintiff engaged a third-party adjuster, Semper Fi Public Adjusters, LLC, to evaluate the claim. ECF 1, at 4 ¶ 30; *see also* ECF 33-5, at 3 (estimate from Semper Fi Public Adjusters, LLC sent to Defendant). On January 26, 2022, following inspection of the residence, the adjuster submitted an estimate of $664,490.66 to Defendant. ECF 35-1, at 2 ¶ 17. The sum encompassed estimates of $216,800 for the residence itself, $162,600 for personal property, $65,040 for loss of use, $43,360 for increased dwelling coverage, $10,840 for debris removal, $21,680 for ordinance and law compliance, and $10,000 for fuel oil release, as well as a $134,170.96 public adjuster fee. ECF 33-5, at 4. Otherwise, the estimate was not itemized. *Id.*

In addition to the $10,000 advance towards replacement of Plaintiff's personal property and the $244,825.41 paid to rebuild Plaintiff's home, Defendant also paid $17,491.90 toward Plaintiff's adjusted living expenses ("ALEs"). ECF 33-6, at 1. The payment was issued to a third-party vendor as monthly rent for temporary housing from June 13 through December 13, 2019. ECF 35-1, at 2. On September 23, 2019, claim specialist White informed Plaintiff that his ALE coverage was due to end on December 13 and would not be extended by Defendant because "[d]elay in rebuild due to [Plaintiff's] contractor is not covered by State Farm." ECF 33-4, at 1.

---

was now estimated at $298,074. *Id.* ¶¶ 26–27. Finally, Plaintiff reports that in August 2021, Morris again updated the estimate to $310,791. *Id.* ¶ 28.

In the same September 2019 communication, White notified Plaintiff that he had not received any updates to Plaintiff's personal property inventory. *Id.* Deposition testimony indicates that White spoke to Plaintiff again over the telephone in December 2019 and again reminded him of the need to prepare an itemized list. ECF 33-8, at 10. Deposition testimony further indicates that Plaintiff did not prepare an itemized list of his personal property, but that White prepared a list when he first inspected the damaged home. *Id.* at 7–8. After the filing of this lawsuit Plaintiff provided Defendant with an additional list of lost personal property. *Id.* at 13.

## II.   **LEGAL STANDARD**

Defendant has moved to dismiss Plaintiff's complaint or, alternatively, for summary judgment. When presented with a motion to dismiss or, in the alternative, a motion for summary judgment, the disposition of the motion "implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure." *Pevia v. Hogan*, 443 F. Supp. 3d 612, 625 (D. Md. 2020). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff has notice that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When a movant expressly captions its motion to dismiss "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur, and the Court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261; *see also Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 657 (D. Md. 2021) ("Notably, 'the

5

Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56 motion.'" (quoting *Ridgell v. Astrue*, Civ. No. DKC-10-3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012))).

Here, Defendant clearly titled its motion (and subsequently filed memorandum in support) as one seeking dismissal, "or, in the alternative," summary judgment. ECF 33, at 1; ECF 36-1, at 1. Defendant attached numerous documents outside the pleadings to the Motion and made frequent reference to them throughout the memorandum of law. *See* ECFs 33-1 to 33-10. In addition to captioning his response as one responding to Defendant's motion to dismiss or for summary judgment, Plaintiff flatly acknowledges in the body of his response that the Motion is one seeking summary judgment. ECF 39, at 4 ("As to Summary Judgement, while the Defendant has not explicitly raised the issue of Summary Judgement, the rationale and application of undeveloped facts seems to indicate that this is the direction it wishes to take the court.").

Nevertheless, Plaintiff argues that summary judgment is inappropriate because "there are a plethora of facts in dispute." ECF 39, at 4. Importantly, however, Plaintiff has not made a claim, much less provided an "affidavit or declaration," indicating that he "cannot present facts essential to justify [his] opposition" to the Motion. Fed. R. Civ. P. 56(d). Indeed, Plaintiff provides his own summary of facts that "are not in dispute," ECF 39, at 2, makes reference to these facts throughout his response, and attaches to his response portions of documents relied on by Defendant in the Motion, *see* ECF 39-2, at 1–3 (copy of ECF 33-1, at 8, 17, and 18); ECF 39-3, at 1–4 (copy of ECF 33-10, at 2–5). Since Plaintiff was clearly on notice that the Motion could be converted to one for summary judgment, the Court will treat the Motion as one seeking summary judgment under Rule 56(a) and will consider the exhibits filed in support of the Motion.

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

"Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists." *Progressive Am. Ins. Co. v. Jireh House, Inc.*, 603 F. Supp. 3d 369, 373 (E.D. Va. 2022) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48 (emphasis in original).

The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam); *Scott v. Harris*, 550 U.S. 372, 378 (2007). Moreover, the Court "may not make credibility determinations or weigh the evidence." *Progressive Am. Ins. Co.*, 603 F. Supp. 3d at 373 (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007)). For this reason, summary judgment ordinarily is inappropriate when there is conflicting evidence because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See*

7

*Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 2003)). "The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion." *Progressive Am. Ins. Co.*, 603 F. Supp. 3d at 373 (citing *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020)).

## III.  ANALYSIS

### A.  Plaintiff's breach of contract claim

Plaintiff alleges that "Defendant's failure and/or refusal to pay adequate compensation on Plaintiff's policy . . . constitutes a breach of Defendant's insurance contract with Plaintiff." ECF 1, at 5 ¶ 45. Plaintiff rests this claim on the fact that Defendant paid a total of $254,376 toward the reconstruction of his home, an amount he argues is insufficient to cover the estimate of $644,490.96 provided by the outside adjusters. *Id.* at 3 ¶ 26, at 4 ¶ 33. Though not explicitly noted in the complaint, the parties appear to agree that Plaintiff also alleges a breach of contract claim based on the theory that Defendant failed to cover the cost of "non-salvageable personal property" lost or damaged in the fire. *See* ECF 36-1, at 2 (discussing Plaintiff's alleged failure to provide an adequate list of lost or damaged items); ECF 39, at 4 (alleging that "[t]he Defendant was provided with a list of damaged items yet chose not to pay for them and created from whole cloth policy obligations that do not exist"). Finally, Defendant construes the complaint as one seeking "out of pocket" costs for "Additional Living Expenses." ECF 42, at 7.

Defendant counters the first element of Plaintiff's breach of contract claim by noting that it is "undisputed" both that Defendant "has paid the limits of coverage for the rebuild of the insured residence to the Plaintiff" and that "the insured residence was not rebuilt and the rebuild repairs were not even started by Plaintiff's contractor." ECF 36-1, at 12. Defendant also contends that Plaintiff initially did not provide an "itemized inventory of his damaged personal property" as required by the policy, ultimately only did so in connection with this litigation, and even then, failed to note "the ages or replacement cost of each item of personal property in compliance with the plain and unambiguous policy language." *Id.* at 13. Under the terms of the policy, Defendant argues, the "Policy pays the Plaintiff the replacement cost of each personal property item *minus the depreciation* which can only be calculated utilizing the ages of each item of personal property provided by the Plaintiff," and so payment for the replacement property cannot be made without sufficient itemization. *Id.* (emphasis in original). Moreover, Defendant emphasizes that Plaintiff is not entitled to payment under his ALE coverage because he never rebuilt or repaired the property and so did not actually occur any ALEs under the terms of the policy.[4] *Id.* at 15. In Defendant's view, because it has paid Plaintiff's policy limit and Plaintiff has not complied with the requirements of the policy to obtain any additional coverage, Defendant is entitled to summary judgment on Plaintiff's breach of contract claim. *Id.* at 18. Defendant further argues that any potential claims for personal property or ALEs that Plaintiff could make are barred by the three-year statute of limitations imposed by both the policy and applicable Maryland law. *Id.* at 14–15. Finally, Defendant characterizes Plaintiff's allegations of failure to act in good faith as "bald and conclusory," absent of any "admissible specific facts" that would support the claim. *Id.* at 17.

---

[4] Defendant additionally argues that, even if Plaintiff had commenced rebuilding, his claims for ALEs are approximate, speculative, and without any evidence such as receipts or leases. ECF 36-1, at 15.

In response, Plaintiff does not seriously dispute any of Defendant's specific factual points related to the alleged breach of contract but appears to argue in general terms that Defendant "fundamentally failed to make all payments available under the policy of insurance and knowingly employed certain tactics to avoid payments under the policy" and that "the issue to be resolved by the fact finder is what did the policy actually cover, and what was paid and whether [there] was a difference between the two." ECF 39, at 7.

The parties appear to agree that Maryland law governs this contractual dispute. *See, e.g.,* ECF 1, at 5; ECF 36-1, at 16–17. "[B]ecause the parties implicitly agree that Maryland law governs their claims, [the Court] need not inquire further into the choice-of-law questions." *Vanderhoof-Forschner v. McSweegan,* 215 F.3d 1323, 2000 WL 627644, at *2 n.3 (4th Cir. 2000) (table opinion). Regardless, it appears that the parties are correct in their assumption. In determining choice-of-law for the interpretation of contracts, a federal district court will apply the choice-of-law rules of the state in which it sits. *Schaefer v. Aetna Life & Cas. Co.,* 910 F. Supp. 1095, 1098 (D. Md. 1996). To determine what law applies in contract cases, Maryland law applies the doctrine of *lex loci contractus,* or the law of the place where the contract was made, unless the parties to the contract provide otherwise. *Dominion Fin. Serv., LLC v. Pavlovsky,* 673 F. Supp. 3d 727, 741 (citing *Brownlee v. Liberty Mut. Fire Ins. Co.,* 175 A.3d 697, 701 (Md. 2017); *Nat'l Glass, Inc. v. J.C. Penney Props., Inc.,* 650 A.2d 246, 248 (Md. 1994)). Insurance policies, as a particular form of contract, are analyzed pursuant to the law of "the state in which the policy is delivered and the premiums are paid." *Primerica Life Ins. Co. v. Zapata,* Civ. No. GJH-14-01202, 2015 WL 1212827, at *2 n.1 (D. Md. Mar. 16, 2015) (quoting *Aetna Cas. & Sur. Co. v. Souras,* 552 A.2d 908, 911 (Md. App. 1989)). Here, the state where the policy was delivered and premiums paid is Maryland, as Plaintiff is a resident of Maryland and was during the duration of the policy,

10

and the covered property in question is located in Maryland. *See* ECF 1, at 1; ECF 33-1, at 1. Accordingly, the Court will apply Maryland law to Plaintiff's breach of contract claim.

For a plaintiff to prevail in a breach of contract action under Maryland law, they must "prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001) (citing *Continental Masonry Co., Inc. v. Verdel Const. Co., Inc.*, 369 A.2d 566, 569 (Md. 1977)). As with the construction and interpretation of other forms of contract, "Maryland law is well settled that 'the interpretation of an insurance policy is governed by the same principles generally applicable to the construction of other contracts.'" *Bethany Boardwalk Grp. LLC v. Everest Sec. Ins. Co.*, 611 F. Supp. 3d 41, 50–51 (D. Md. 2020) (quoting *Mitchell v. AARP*, 779 A.2d 1061, 1069 (Md. App. 2001)).

"[J]udicial 'interpretation of insurance contracts to determine the scope and limitations of the insurance coverage, like any other contract, begins with the language employed by the parties.'" ECF 361-1, at 50–51 (citing *MAMSI Life & Health Ins. Co. v. Callaway*, 825 A.2d 995, 1005 (Md. 2003)). Courts are to "'look first to the contract language employed by the parties to determine the scope and limitations of the insurance coverage,' and if the 'terms used in the insurance policy are plain and unambiguous, [the court] will determine the meaning of the terms of the contract as a matter of law.'" *Pa. Nat. Mut. Cas. Ins. Co. v. Roberts*, 668 F.3d 106, 118 (4th Cir. 2012) (quoting *Cole v. State Farm Mut. Ins. Co.*, 753 A.2d 533, 537 (Md. 2000) and *Clendenin Bros. v. U.S. Fire Ins. Co.*, 889 A.2d 387, 393 (Md. 2006)). While Maryland law does not require insurance policies to be "most strongly construed against the insurer," any ambiguity remaining after consideration of extrinsic evidence "will ordinarily be resolved against the party who drafted the contract, where no material evidentiary factual dispute exists." *Bethany Boardwalk*, 611 F.

Supp. 3d at 52 (internal citations and quotations omitted). "In interpreting contract language, 'the court will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used.'" *Jackson v. Standard Fire Ins. Co.*, 406 F. Supp. 3d 480, 488 (D. Md. 2019) (quoting *Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 829 A.2d 540, 546 (Md. 2003)).

### 1. Defendant has paid in excess of the policy limits for coverage of Plaintiff's dwelling

Defendant attaches to the Motion a copy of the insurance policy executed between the parties. *See* ECF 33-1, at 1–53. Plaintiff excerpts portions of the same document in his opposition. *See* ECF 39-2, at 1–3.[5] The terms of the policy flatly provide that Plaintiff was entitled to coverage of his dwelling in the amount of $191,700 and his dwelling extension in the amount of "[u]p to $19,170." ECF 33-1, at 3. In addition, the policy included an optional increased dwelling coverage ("ID coverage") up to $38,340 and an optional ordinance and law coverage ("OL coverage") of up to 10% of $19,170, or $1,917. *Id.* Under the policy, all losses are subject to a $2,000 deductible. *Id.* In the event of damage or loss to the dwelling, the policy obligates Defendant to "pay the cost to repair or replace with similar construction and for the same use," subject to the following provisions:

> (1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged party of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property;
>
> (2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less;
>
> (3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within

---

[5] As noted, Plaintiff appears to have directly copied the document as included in Defendant's Motion, as Plaintiff's excerpts still include the ECF headings for Defendant's exhibit at 33-1.

two years after the date of loss, and notify us within 30 days after the work has been
completed[.]

*Id.* at 25. The policy further provides that the insured is entitled to additional payments under ID

coverage in "the amount [the insured] actually and necessarily spend[s] to repair or replace the

damaged building structures" in excess of the base coverage, but not to "exceed the [ID coverage]

limit of liability shown in the Declarations to repair or replace the Dwelling." *Id.* at 36. Under the

terms of the policy, that limit is $38,340, *id.* at 3, or else "10% of the [ID coverage] limit of liability

covered under [Coverage A – Dwelling], [and] Dwelling Extension," *id.* at 36. The latter amount

appears to be $21,087, arrived at by taking 10% of the coverage limits for the dwelling ($19,170)

as well as the dwelling extension ($1,917) and adding the two together. *See id.* at 3. The policy

also provides building OL coverage once "the dwelling is actually repaired or replaced at the same

or another premises in the same general vicinity" and within the span of two years. *Id.* at 38. This

OL coverage amount appears to be capped at up to "10% / $19,170." *Id.* at 3.

In summary, under the terms of the policy, Plaintiff was entitled to the base coverage of

$191,700 for his home and $19,170 for any existing extension, for a total of $210,870. ECF 33-1,

at 3. Plaintiff could also claim up to $38,340 in optional ID coverage and $1,917 in optional OL

coverage, for a total of $40,257, once rebuilding or repair had been complete. *Id.* at 3, 36, 38. In

the event that the cost to rebuild exceeded the amount stipulated by the policy declarations,

Plaintiff could receive additional payments, if rebuilding was completed within two years of the

date of loss and Defendant was notified within thirty days of completion of the work. *Id.* at 25.

The parties do not dispute that the base coverage policy limit has been exhausted. *See* ECF

36-1, at 2 ¶ 7 ("The payment in the amount of $196,613.23 represented the Coverage A – Dwelling

limit of $191,700.00, plus $6,913.23 paid under the Option ID coverage, minus the policy

deductible of $2,000.00.") (citing ECF 33-7, at 1–2 ¶ 8 ("Affidavit of Alexandra Thurston," a

"Team Manager" employed by Defendant)); ECF 39, at 2 (noting in the "universe of facts that are not in dispute" the fact that Defendant made "payment in the amount of $196,613.23 [which] represented the Coverage A—Dwelling limit of $191,700.00, plus $6,913.23 paid under the Option ID coverage, minus the policy deductible of $2,000.00") (citing ECF 33-7, a 1–2 ¶ 8). The parties also do not dispute that Plaintiff's property has not been rebuilt. ECF 33-9 (Plaintiff's Responses to Defendant's Interrogatories), at 4 ¶ 13 and at 5 ¶ 17 (noting that demolition was completed but no other work). By the plain terms of the contract, then, Plaintiff has received the maximum limits of his coverage and does not have an entitlement to any additional coverage amounts available under the policy since no work was performed, and certainly not a rebuilding of the property. The policy clearly provides that Plaintiff was to receive the base coverage amount of $191,700 upon incurring loss of his home, with additional money to be paid out as covered expenses were incurred. There appears to be no dispute that these payments were made. And while Plaintiff raises valid reasons for why no rebuild commenced, the fact remains that it did not. As such, Plaintiff has no claim for breach of contract as to the dwelling or additional reimbursements since the policy limits were reached.

Plaintiff also appears to allege that Defendant may have excluded reimbursement under the dwelling extension option. *See* ECF 39, at 6 (alleging that "Defendant knowingly did not include all policy limits"). However, there is no evidence in the record to suggest that Plaintiff had such a qualified "dwelling extension" on his property that was destroyed in the fire. Plaintiff does not specifically allege that any covered extension existed, and the itemized claim receipt provided by Defendant makes no mention of any additional structure on the property apart from the residence itself. *See* ECF 33-2, at 1–90. As dwelling extension coverage applies only to "other structures on the residence premises separated from the dwelling by clear space," ECF 33-1, at 40, and

Plaintiff has offered no evidence that such a structure existed on Plaintiff's property, Plaintiff cannot show entitlement to payment under the dwelling extension option. As it relates to the breach of contract claims related to the residence and rebuild, Defendant is entitled to summary judgment as a matter of law as "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). Nor can he show he is owed any other additional money beyond that already paid out, in excess of the contractual policy limit.

### 2. Plaintiff may have complied with the policy's property inventory requirements

As a threshold matter, Defendant argues that the statute of limitations has run on any claims related to Plaintiff's loss of personal property. ECF 36-1, at 13 ("More importantly, the Plaintiff had three years from the date the personal property claim accrued to provide his itemized inventory of damaged personal property according to the terms of the Policy and Maryland's applicable statute of limitations[.]"). Under the applicable statute of limitations for breach of contract, Plaintiff would have three years from the date of the alleged breach to file a claim. *See* Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 5-101. Maryland law provides that "[i]t is the discovery of the injury, and not the discovery of all of the elements of a cause of action that starts the running of the clock for limitations purposes." *Lumsden v. Design Tech Builders, Inc.*, 479 A.2d 796, 804 (Md. 2000). Defendant argues that Plaintiff's claim for personal property compensation accrued in December 2019, when Plaintiff told claim specialist White that Plaintiff did not believe he had to submit an additional inventory apart from the one that had already been prepared during the initial inspection of the residence. *See* ECF 33-8 (Deposition of Plaintiff), at 10 (page 63, lines 5–22).[6] Defendant further alleges in his memorandum of law that during this conversation, Plaintiff

---

[6] The actual exchange between Plaintiff and White is far from clear, largely because Defendant attaches only a portion of the deposition transcript summarizing Epp's recounting of the relevant conversation. The deposition transcript reflects that Epp was told by White that there was a "need for [Epp] to provide ages and prices for [Epp's] personal property." ECF 33-8, at 10. Epp appears

also told White that "he intended to hire a lawyer to dispute this requirement." ECF 36-1, at 2 (citing Exhibit H, p. 63–64).[7] "Accordingly," Defendant alleges, "at a minimum, the date the personal property claim accrued was in December 2019 when the Plaintiff, by his own testimony, told [claim specialist] White he planned to hire a lawyer to dispute this requirement." *Id.* at 14.

There is no dispute that "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation omitted). Rule 56(c) makes clear that "[a] party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Moreover, "[w]hen the viability of a statute of limitations defense hinges on a question of fact, . . . the factual question is ordinarily resolved by the jury, rather than by the court." *Doe v. Archdiocese of Washington*, 689 A.2d 634, 639 (Md. App. 1997).

---

to agree, but notes that he then told White "it's a complete total loss" and further stated that Defendant "owe[d] Epp for what [Epp] was insured for, everything was destroyed." *Id.* Epp acknowledges in his deposition that he was told by White that he "needed to put ages and prices to the list he had created," but the transcript then reflects that Epp stated, "[y]eah, I told him." *Id.* Epp was then asked to clarify whether he "told [White] that [Epp] felt like [he] didn't have to do the ages and prices," but the transcript provided does not capture Epp's response as it omits the next page of the deposition transcript, page 64, where Epp presumably responded to counsel's question. *Id.*

[7] As noted, *supra* note 6, Defendant failed to provide page 64 of the deposition transcript.

Defendant claims that Plaintiff exclaimed that he was going to hire an attorney to dispute the alleged requirement that Plaintiff compile a more detailed list of items lost. This statement is the lynchpin Defendant's statute of limitations argument. However, despite alleging that proof of the statement exists, Defendant fails to provide it.[8] Under a strict reading of Rule 56, the Court is constrained to deny summary judgment on this basis.

As to what is not in dispute, the policy provides that Plaintiff is entitled to coverage in the amount of $143,775 for his personal property. ECF 39-2, at 3. In the subsection entitled "Your Duties After Loss," the policy stipulates that the insured will "prepare an inventory of damaged or stolen property," including, "in detail," the "quantity, description, age, replacement cost and amount of loss" along with "all bills, receipts and related documents that substantiate the figures in the inventory." ECF 33-1, at 27. The policy also requires the insured to submit the inventory within 60 days after the loss. *Id.*

Judge Quarles of this Court noted that "[p]rovisions," like the property inventory at issue here, "requiring the submission of information upon request are categorized as cooperation clauses." *Snyder v. Chester Cnty. Mut. Ins. Co.*, 264 F. Supp. 2d 332, 337 (D. Md. 2003) (citing *Allstate Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 767 A.2d 831, 839 (Md. 2001)). "A cooperation clause may be either an express condition or a covenant." *Id.* (citing *Hartford Fire Ins. Co. v. Himelfarb*, 736 A.2d 295, 300 (Md. 1999)).[9] "Strict compliance with an express condition is

---

[8] Moreover, Plaintiff does not appear to concede that this statement was made as it is not included in the list of "facts that are not in dispute" included in Plaintiff's response. See ECF 39, at 2.

[9] In *Himelfarb,* the Supreme Court of Maryland looked at two factors to determine whether the language of an insurance contract created a condition precedent or a covenant. The first factor examined the wording, arrangement, and contents of the subsection where the conditional language appeared, in accordance with the principle of interpreting contracts in their entirety. *Himelfarb,* 736 A.2d at 300. The second factor concerned the usage of conditional language in the relevant subsection. The court recognized that "such words and phrases as 'if' and 'provided

required to maintain the insurer's payment obligation" whereas "[m]ere substantial compliance with a covenant is sufficient." *Id.* Stated differently, if the requirement to provide a list of lost property with ages and costs is considered an express condition, it would be "a condition precedent," or one that "is typically a requirement that must be performed by the insured 'before any obligation on the part of the assurer commences.'" *John v. Essentia Ins. Co.*, Civ. No. 23-310-PJM, 2024 WL 2978232, at *6 (D. Md. June 13, 2024) (quoting *Woznicki v. GEICO Gen. Ins. Co.*, 115 A.3d 152, 172 (Md. 2015)).

There may exist a dispute over whether the cooperation clause here requiring a detailed property list is a condition precedent or a covenant. *See supra* note 9.[10] However, the record before the Court generates a dispute of material fact over Plaintiff's compliance with the cooperation clause regardless of whether it functions as a condition precedent or a covenant. Defendant is correct that the policy clearly requires Plaintiff, after incurring a loss, to "see that . . . an inventory of damaged property" is "prepar[ed]" that includes "in detail the quantity, description,

---

that,' are commonly used to indicate that performance has been expressly made conditional as have the words 'when,' 'after,' 'as soon as,' or 'subject to.'" *Id.* As in *Snyder*, judges in this district continue to rely on *Himelfarb* to determine if a cooperation clause requiring the submission of a list or other documents from an insured is a covenant or a condition precedent. *See, inter alia, Gehani v. Am. Zurich Ins. Co.*, 287 F. Supp. 3d 574 (D. Md. 2017); *Essentia*, 2024 WL 2978232, at *7. However, the Court need not decide this question now since, under either standard, there remains a dispute of material fact as to whether Plaintiff complied with the requirements under the policy to ensure a list of personal property losses was provided to the insurer.

[10] In *Lindsey v. State Farm Fire and Cas. Co.*, Judge Williams analyzed an insurance policy that was virtually identical to the one at issue here and determined that "the lack of operative words in the phrase 'Your Duties After Loss'" constituted a "strong presumption to the phrase being a covenant." Civ. No. AW-00-132, 2000 WL 1597763, at *3 (D. Md. Oct. 23, 2000) (citing *Himelfarb*, 736 A.2d at 300). Insurers have even conceded that clauses similar to the one in Plaintiff's policy are mere covenants requiring only substantial compliance. *See Ruarke v. Donegal Mut. Ins. Co.*, Civ. No. WMN-08-212, 2008 WL 11363793, at *4 (D. Md. June 2, 2008) ("Donegal concedes, and this Court agrees, that the 'duties after loss' provision at issue in this case is a covenant, not an express condition."). As noted, the Court need not make a decision at this time on whether the clause here is a covenant or a condition precedent.

age, replacement cost, and amount of loss." ECF 33-1, at 27.[11]  However, the record also reflects

that a list was indeed prepared, though by White. ECF 33-3, at 2–7.  This list included descriptions

and quantity of Plaintiff's lost property.  *Id.*  The record also reflects that there was a back and

forth between Plaintiff and White, one in which Plaintiff and White apparently discussed the "need

to provide ages and prices for [Plaintiff's] personal property list." ECF 33-8, at 10.  The short

deposition excerpt provided by Defendant reflects that Plaintiff responded to White by saying,

"yeah, I told him," *id.,* a response that fails to definitely establish what Plaintiff said to White or

what White said to Plaintiff regarding the inventory requirements.  Given that the policy clearly

only requires Plaintiff to "see that" a list is created, ECF 33-1, at 27, and did not require Plaintiff

to create the list himself, the mere fact that White drafted the list is not dispositive of either

Plaintiff's compliance or noncompliance with this provision of the policy.  The ambiguity in the

conversation, and the omission of deposition testimony which might resolve that ambiguity, leaves

the Court unable to conclude if Plaintiff's response, "yeah, I told him," ECF 33-8, at 10, indicates

that Plaintiff "told" White he did not want to create a detailed inventory, or that he "told" White

relevant information regarding the inventory, or even that he "told" White some other thing.  Put

differently, because the transcript of the deposition provided to the Court is silent as to what

Plaintiff told White about White's handwritten list, the Court can only speculate as to Plaintiff's

compliance, substantially or otherwise, with this provision of the policy.[12]  Particularly when the

---

[11] Plaintiff appears to contest the existence of a contractual provision obligating Plaintiff to ensure a detailed list of lost or damaged property is created after a loss. *See* ECF 39, at 11 (alleging that "there is no such obligation in the policy").  However, Plaintiff supports this claim with a citation to a summary of coverage, ECF 39-2, at 1 (citing ECF 33-1, at 8), not the actual policy at issue. Defendant attaches the full policy which plainly includes a requirement to ensure that a list of lost property is compiled.  ECF 33-1, at 27.

[12] The transcript reflects that counsel for Defendant was under the impression that Plaintiff told White he did not need to provide a more detailed list. ECF 33-8, at 10 (noting that defense counsel responded by saying: "So you told [White] that you felt like you didn't have to do the ages and

Court "must construe all facts and reasonable inferences in the light most favorable to the nonmoving party," *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020), summary judgment on this aspect of the claim would be inappropriate at this time.

Subsequent developments that have occurred in the course of this action do not change the Court's analysis in this regard. Defendant is correct that the record reflects that Plaintiff later provided another detailed list of lost property while this litigation was already underway. *See* ECF 33-8, at 13; ECF 33-9, at 2; ECF 33-10, at 2–5. However, the fact that Plaintiff apparently provided a list while litigation was underway does not answer the question of whether Plaintiff's earlier interactions with White satisfied his obligations under the Policy to "see that" the duty of preparing of "inventory of . . . damaged property" was complied with. ECF 33-1, at 27. Moreover, though Defendant argues that "[d]uring his deposition, [] Plaintiff testified that he advised CS White he would not provide an itemized inventory of his damaged personal property under the incorrect belief the fact [sic] CS White deemed the residence and personal property a 'total loss' excused him from his contractual obligations under the [p]olicy," ECF 36-1, at 13, the cited deposition does not establish as much.

To be clear, it is far from certain that Plaintiff will ultimately prevail on this critical point. This is particularly true if the Court ultimately holds that the inclusion of the ages and replacement costs of lost items is a condition precedent requiring total compliance before Defendant must

---

prices?"). However, as noted *supra*, the relevant portion of the transcript ends at this point and Plaintiff never confirms nor denies the assertion made by counsel on the record before the Court. The Fourth Circuit, albeit in an unpublished, per curiam opinion applying Virginia law, recently cautioned that questions of compliance with an identical list-making requirement in a similar policy are best saved for a jury, even when an insured's inventory was "far from perfect, and many of the entries provided no detail beyond a bare description of the item and an estimated value." *Hale v. State Farm Fire & Cas. Co.*, No. 22-2291, 2025 WL 40549, at \*8 (4th Cir. Jan. 7, 2025). The Court is especially heedful of this caution where the record is incomplete as to a crucial question of fact.

perform its obligations under the policy (or before Plaintiff can file suit). Perhaps it is truer still if Defendant can offer support for its claim that Plaintiff steadfastly refused to provide that information despite being asked repeatedly to do so. However, given that the Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party, the record before the Court does not establish Plaintiff's noncompliance as a matter of law and thus summary judgment is inappropriate as to the aspect of Plaintiff's breach of contract claim.

### 3. Plaintiff's claim for ALE coverage is barred by the statute of limitations

Under the terms of the policy, Plaintiff is entitled to ALE coverage matching the actual loss sustained for loss of use of the dwelling. ECF 39-2, at 3. It appears to be undisputed that, pursuant to the ALE coverage provision, Defendant paid $17,491.90 to a third party as monthly rent for temporary housing for Plaintiff from June 13, 2019, through December 13, 2019. *See* ECF 33-6, at 1. Defendant attests that Plaintiff did not provide a specific claim for ALEs after Defendant stopped paying for the temporary housing on December 13, 2019. *See* ECF 36-1, at 8. Defendant also asserts that Plaintiff only made them aware of ALEs incurred during a deposition taken in the course of this litigation. *See id.* at 15. Defendant further argues that Plaintiff concedes he did not provide receipts or lease agreements to Defendant to substantiate these ALE claims because Plaintiff didn't sign a lease or receive receipts for housing as he was living with family and friends and paying in cash. *Id.* Finally, Defendant argues that Plaintiff's claim for further ALEs is barred by the applicable statute of limitations, as Defendant terminated Plaintiff's ALE payments on December 13, 2019. *Id.* While Plaintiff rejects Defendant's characterization of his post-December 2019 living expense estimates as "speculative," *see* ECF 36-1, at 15, he does not contest Defendant's other factual assertions with respect to his claims for ALEs. *See generally* ECF 39, at 8.

21

The Court agrees with Defendant that Plaintiff's claims for ALEs are barred by the statute of limitations. Defendant shows that it ceased paying Plaintiff's ALEs on December 13, 2019, on the grounds that repair work had not yet commenced and that Plaintiff received advance notice of Defendant's decision to terminate ALE payment in September 2019. *See* ECF 33-4, at 1. Plaintiff does not dispute Defendant's characterization. *See generally* ECF 39. Plaintiff also does not dispute that he first indicated to Defendant that he had subsequently incurred further ALEs until February 8, 2024, when he responded to Defendant's interrogatory stating that he had incurred $63,600 in rental expenses and was seeking that amount in ALE coverage. *See* ECF 33-9, at 4 ¶ 14. Over four years had elapsed between the time Defendant stopped paying Plaintiff's ALEs and the time Plaintiff declared to Defendant that he was seeking tens of thousands of dollars in incurred living expenses.

Under Maryland law, "a cause of action for breach of contract accrues when the contract is breached, and when the 'breach was or should have been discovered.'" *Boyd v. Bowen*, 806 A.2d 314, 333 (Md. App. 2002) (quoting *Jones v. Hyatt Ins. Agency, Inc.*, 741 A.2d 1099, 1104 (Md. 1999)). Actions for breach of contract in the insurance contexts typically accrue at the time of denial of coverage. *See Baltimore Scrap Corp. v. Exec. Risk Specialty Ins. Co.*, 388 F. Supp. 3d 574, 593 (D. Md. 2019). Here, ALE payments ended on December 13, 2019. Under the relevant statute of limitations for breach of contract actions, Plaintiff had until December 13, 2022 to bring a claim for ALEs. This suit was not filed until March 6, 2023, *see* ECF 1, and a demand for further ALEs was not submitted until February 8, 2024. *See* ECF 33-9, at 4 ¶ 14. Plaintiff's claim that Defendant is in breach for failure to pay extra ALEs is therefore barred by the statute of limitations.

### B.    Plaintiff's good faith claim

Plaintiff also brings a claim against Defendant for failure to act in good faith, in violation of Md. Code. Ann., CJP § 3-1701.[13]  Plaintiff argues that Defendant "has not formed judgments supported by the evidence, or based on honesty and diligence" and has further "made false representations in substantiation of positions made arbitrarily and capriciously, without reasonable support by the evidence, or with the diligence to have sought the information requisite to form the basis of such decisions." ECF 1, at 6 ¶¶ 51–52. Plaintiff accuses Defendant of "creat[ing] arbitrary delays in its response" such that the cost of repairing the house increased beyond the policy limits. ECF 39, at 9–10.

"Maryland provides a special cause of action for lack of good faith by a property, casualty, or individual disability insurer in handling claims under insurance policies issued, sold, or delivered in Maryland." *Barry v. Nationwide Mut. Ins. Co.*, 298 F. Supp. 3d 826, 829–30 (D. Md. 2018) (citing CJP § 3-1701(b)). "Such a suit (1) must be used to determine coverage and/or entitlement to payment, (2) must allege that the insurer failed to act in good faith, and (3) may seek actual damages under the policy, expenses and litigation costs, and interest on expenses and litigation costs." *All Class Const., LLC v. Mut. Ben. Ins. Co.*, 3 F. Supp. 3d 409, 416 (D. Md. 2014) (citing CJP § 3-1701(d)). "Good faith" is defined in the statute as "an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim." CJP § 3-1701(a)(5). "But the statute negates any

---

[13] Under CJP § 3-1701(c), "a party may not file an action under this subtitle before the date of a final decision under § 27-1001 of the Insurance Article." *See* Md. Code. Ann., Ins. § 27-1001 ("Insurance Article").  The relevant section of Maryland Insurance Article requires a complaint stating a cause of action under § 3-1701 to first be adjudicated in an administrative proceeding. Insurance Article § 27-1001(d). Plaintiff contends, and Defendant does not dispute, that he first "filed a complaint with the Maryland Insurance Administration" and received a final decision denying relief on his claim. ECF 1, at 4 ¶ 39. The Court therefore proceeds to consideration of the merits of Plaintiff's CJP § 3-1701 claim.

claim of failure to act in good faith 'solely on the basis of delay in determining coverage or the extent of payment to which the insured is entitled if the insurer acted within the time period specified by statute or regulation for investigation of a claim by an insurer.'" *All Class Const., LLC*, 3 F. Supp. 3d at 416 (quoting CJP § 3-1701(f)).

Whether an insurer acted with sufficient "honesty and diligence" and thus in good faith is evaluated in light of the totality of the circumstances, including considerations of:

> (1) efforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insureds; (2) the substance of the coverage dispute or the weight of legal authority on the coverage issue; and (3) the insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage.

*Barry*, 298 F. Supp. 3d at 830 (internal quotations and alterations omitted). "An improper denial of coverage alone does not show a lack of good faith." *Charter Oak Fire Co. v. Am. Cap., Ltd.*, Civ. No. DKC 09-0100, 2016 WL 827380 (D. Md. Mar. 3, 2016) (citing *All Class Const.*, 3 F. Supp. 3d at 418), *aff'd*, 760 F. App'x 224 (4th Cir. 2019). Moreover, "[a]n insured must prove that an insurer breached the contract in order to bring a lack of good faith claim" but must also "prove more than simply breach of contract to prevail." *Barry*, 298 F. Supp. 3d at 830 (citing *Cecilia Schwaber Trust Two v. Hartford Accident & Indem. Co.*, 636 F. Supp. 2d 481, 488 n.6 (D. Md. 2009); *Bierman Family Farm, LLC v. United Farm Family Ins. Co.*, 265 F. Supp. 3d 633, 638 (D. Md. 2017)). A delay in handling a claim "generally cannot serve as the sole basis for a lack of good faith claim," except where "the insurer does not act 'within the time period specified by statute or regulation for investigation of a claim.'" *Id.* (quoting CJP § 3-1701(f)).

Again, a claim for lack of good faith requires a finding of a breach of contract. *See Barry*, 298 F. Supp. 3d at 830. Given that the Court has disposed of Plaintiff's breach of contract claims

regarding the failure to pay above the policy limits and the failure to pay ALEs, these allegations cannot sustain a claim for failure to act in good faith.

However, even for the surviving claim regarding Plaintiff's personal property coverage, summary judgment is warranted. Plaintiff's response largely repeats unadorned allegations of failure to act in good faith without actually responding to Defendant's arguments. *See* ECF 39, at 7–8. The factual statements Plaintiff does allege, such as that "the carrier simply decided to make no payments under policy," *id.* at 7, are clearly belied by the evidentiary record. In essence, Plaintiff has failed to respond to the arguments in support of summary judgment as to this claim. Since a plaintiff who "fails to respond to an argument raised in a dispositive motion is deemed to have abandoned the claim," the Court finds that Plaintiff's claim regarding breach of the duty of good faith may not proceed. *Rodgers v. Eagle All.*, 586 F. Supp. 3d 398, 448 (D. Md. 2022); *see also Ferdinand-Davenport v. Child.'s Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010).

Even if the Court overlooked Plaintiff's abandonment of his claim, summary judgment is nonetheless appropriate. With respect to the first and third factors enumerated in *Barry*, there is scant evidence that Defendant failed either to take efforts "to resolve the coverage dispute [regarding personal property] promptly" or to act with "diligence and thoroughness in investigating the facts specifically pertinent to coverage." *Barry*, 298 F. Supp. 3d at 830. Instead, both Plaintiff and Defendant acknowledge that claim specialist White took the initiative in preparing a preliminary list of damaged or destroyed personal property during the first visit to the damaged home. *See* ECF 39, at 2. Moreover, Defendant indicates, and Plaintiff does not dispute, that claim specialist White reached out to Plaintiff in September 2019 to discuss the personal property inventory, and did so again in December of 2019. *See* ECF 33-4, at 1; ECF 33-8, at 10. These facts show that Defendant took steps to help Plaintiff compile an initial draft of his property

inventory and subsequently contacted him to discuss the details, reflecting that Defendant did, indeed, affirmatively and diligently attempt to resolve the coverage issue. *Cf. Cincinnati Ins. Co. v. Fish*, 587 F. Supp. 3d 329, 341 (D. Md. 2022) (finding that an insurer did not fail to act in good faith where it "undertook serious efforts to resolve the coverage dispute" and was "diligent in its investigation") Finally, regarding the second factor discussed in *Barry*, the Court cannot say that "the weight of legal authority on the coverage issue" clearly disfavored Defendant's apparent insistence on a detailed inventory. *Barry*, 298 F. Supp. 3d at 830. Regardless of whether the detailed inventory requirement is determined to be a condition precedent or a covenant, the law does not suggest that it was unreasonable for Defendant to merely ask for it. The Court grants Defendant's motion as to this claim.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion, construed as a motion for summary judgment, will be **GRANTED** in part and **DENIED** in part.

A separate implementing Order will issue.

Dated: January 30, 2025                                  /s/
                                                 Brendan A. Hurson
                                                 United States District Judge